1  ROBERT A. HESSLING (State Bar No. 096466)
   *rhessling@gmail.com*
2  MATTHEW F. KENNEDY (State Bar No. 199485)
   *matthewfkenn@gmail.com*
3  ROBERT A. HESSLING, APC
   3853 Meadow Park Lane
4  Torrance, California 90505
   Telephone: (310) 375-0255
5  Facsimile: (310) 373-5152

6  General Counsel for Karl T. Anderson,
   Chapter 7 Trustee
7

8                    **UNITED STATES BANKRUPTCY COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10                         **RIVERSIDE DIVISION**

| 11 | In re | ) Case No. 6:16-bk-19786-SC |
|---|---|---|
| | | ) Chapter 7 |
| 12 | LARRY KATES, | ) |
| 13 | Debtor. | ) **MOTION OF TRUSTEE FOR ORDER:** |
| | | ) **(1) AUTHORIZING SALE OF REAL** |
| | | ) **PROPERTY FREE AND CLEAR OF** |
| 14 | | ) **LIENS AND ENCUMBRANCES;** |
| | | ) **(2) APPROVING OVERBID** |
| 15 | | ) **PROCEDURES; (3) AUTHORIZING** |
| | | ) **PAYMENTS OF UNDISPUTED LIENS,** |
| 16 | | ) **COSTS OF SALE, PROPERTY TAXES,** |
| | | ) **AND HOMESTEAD EXEMPTION;** |
| 17 | | ) **(4) FINDING THAT REAL PROPERTY** |
| | | ) **IS COMMUNITY PROPERTY AND** |
| 18 | | ) **AUTHORIZING TRUSTEE TO** |
| | | ) **INCLUDE IN SALE ORDER THAT** |
| 19 | | ) **REAL PROPERTY IS COMMUNITY** |
| | | ) **PROPERTY AND THAT TRUSTEE IS** |
| 20 | | ) **AUTHORIZED TO SELL ENTIRE** |
| | | ) **REAL PROPERTY; AND** |
| 21 | | ) **(5) FINDING THAT PURCHASER IS** |
| | | ) **GOOD FAITH PURCHASER UNDER** |
| 22 | | ) **11 U.S.C. § 363(m);** |
| | | ) **MEMORANDUM OF POINTS AND** |
| 23 | | ) **AUTHORITIES;** |
| | | ) **DECLARATIONS OF KARL T.** |
| 24 | | ) **ANDERSON, DYLAN EVANS, AND** |
| | | ) **TAMI EVANS; AND REQUEST FOR** |
| 25 | | ) **JUDICIAL NOTICE** |
| 26 | | ) Date: September 11, 2018 |
| | | ) Time: 11:00 a.m. |
| 27 | | ) Ctrm: Video Courtroom "5C" |
| | | ) 3420 Twelfth St. |
| 28 | | Riverside, CA |

1

1

# TABLE OF CONTENTS

2

Page

3  I    INTRODUCTION ........................................................................................................... 4

4  II   STATEMENT OF FACTS ............................................................................................. 5

5  III  ARGUMENT .................................................................................................................. 9

6        A.    The Trustee Has Complied with All of the Requirements under the
              Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local
7              Bankruptcy Rules Governing the Sale of the Property. ............................................. 9

8        B.    The Sale Free and Clear of Liens and Encumbrances, with Such Liens and
              Encumbrances to Attach to the Sale Proceeds, Is Proper under Section
9              § 363(f). ..................................................................................................................... 11

10       C.    The Sale Should Be Approved Because the Purchase Price Is Fair and
              Reasonable and the Sale Is in the Best Interests of the Creditors and the
11             Estate. ........................................................................................................................ 11

12       D.    The Trustee Should Be Authorized to Execute Any and All Documents That
              May Be Necessary to Consummate the Sale of the Property. ..... ............................. 12
13
         E.    The Overbid Procedures Should Be Approved Because Such Procedures Are
14            Reasonable. ............................................................................................................... 12

15       F.    The Payments of the Undisputed Liens, the Costs of Sale, and the Unpaid
              Property Taxes Are Necessary, and the Payment of the Homestead
16             Exemption Is Proper.. ............................................................................................... 12

17       G.    The Finding That the Property Is Community Property and the Inclusions of
              Language in the Sale Order That the Property Is Community Property and
18             That the Trustee Is Authorized to Sell the Entire Property Are Consistent
              with Current Law and Are Necessary for Title Insurance Purposes.. .................... 13
19
         H.    A Finding That Each of the Purchasers Is a Good Faith Purchaser under
20             11 U.S.C. § 363(m) Is Proper. ................................................................................. 16

21 IV    CONCLUSION ............................................................................................................. 17

22 DECLARATION OF KARL T. ANDERSON ................................................................... 19

23 DECLARATION OF DYLAN EVANS .............................................................................. 23

24 DECLARATION OF TAMI EVANS .................................................................................. 24

25 REQUEST FOR JUDICIAL NOTICE ............................................................................... 25

26

27

28

i

1

## TABLE OF AUTHORITIES

2

Page

3

### Cases

4

5  *Big Shanty Land Corp. v. Comer Properties, Inc.*, 61 B.R. 272, 278 (Bankr. N.D. Ga. 1985)....... 11

6  *In re Alpha Industries, Inc.*, 84 B.R. 703, 705 (Bankr. D.Mont. 1988)........................................... 12

   *In re Canyon Partnership*, 55 B.R. 520 (Bankr. S.D. Cal. 1985)...................................................... 11
7
   *In re Elliot*, 94 B.R. 343, 345 (Bankr. D.Pa. 1988) ........................................................................ 11
8
   *In re Ewell*, 958 F.2d 276, 281 (9th Cir. 1992) ............................................................................... 16
9
   *In re Marriage of Brooks v. Robinson*, 169 Cal.App.4th 176 (Cal. Ct. App. 2008)....................... 14
10
   *In re Marriage of Buie & Neighbors,*
11        179 Cal.App.4th 1170, 1173-1175, 102 Cal.Rptr.3d 387 (Cal. Ct. App. 2009).................. 14

12 *In re Marriage of Cross,* 94 Cal.App.4th 1143, 1147-1148, 114 Cal.Rptr.2d 839 (Cal. Ct. App.
           2001)............................................................................................................................................. 14
13
   *In re Marriage of Steinberger,* 91 Cal.App.4th 1449, 1463-1466, 111 Cal.Rptr.2d 521 (Cal Ct.
14         App. 2001) ................................................................................................................................... 14

15 *In re Marriage of Valli,* 58 Cal.4th 1396, 171 Cal.Rptr.3d 454, 324 P.3d 274 (2014) .................. 13

16 *In re Marriage of Valli*, 58 Cal.4th at 1405.................................................................................... 14

17 *In re Marriage of* Valli, 58 Cal.4th at 1405-1406 ......................................................................... 15

18 *In re Obedian*, 546 B.R. 409 (Bankr. C.D. Cal. 2016).................................................................... 15

19 *In re Pine Coast Enters., Ltd.*, 147 B.R. 30, 33 (Bankr. N.D. Ill. 1992) ......................................... 16

20 *In re Summers*, 332 F.3d 1240 (9th Cir. 2003)................................................................................ 13

21 *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991) .......................... 11

22 *Kham and Nate's Shoes No. 2 v. First Bank*, 908 F.2d 1351, 1355 (7th Cir. 1990) ....................... 16

23 *Matter of Chung King, Inc.*, 753 F.2d 547 (7th Cir. 1985)............................................................. 11

24

### Statutes

25

   11 U.S.C. § 363(b)(1) ....................................................................................................................... 11
26
   11 U.S.C. § 363(b)(2) ......................................................................................................................... 9
27
   California Evidence Code § 662........................................................................................................ 13
28

1   California Family Code § 760 .......................................................................................................13

2   California Family Code § 852 .......................................................................................................13

3   California Family Code § 852(a).....................................................................................................13

4

## Other Authorities

5

6   *2 Collier on Bankruptcy*, ¶ 363.03[1] (15th ed.)..............................................................................12

   S.REP.NO. 989, 95th Cong., 2d Sess. 57 (1978) .........................................................................11

7

8

## Rules

9   Fed.R.Bankr.P. 102(1) .................................................................................................................9

10   Fed.R.Bankr.P. 2002(a)(2)............................................................................................................9

11   Fed.R.Bankr.P. 2002(c)(1).............................................................................................................9

12   Fed.R.Bankr.P. 2002(c)(1)(i)..........................................................................................................9

13   Fed.R.Bankr.P. 2002(c)(1)(k)..........................................................................................................9

14   Fed.R.Bankr.P. 2002(k) .................................................................................................................9

15   Fed.R.Bankr.P. 6004(a) .................................................................................................................9

16   Fed.R.Bankr.P. 6004(c) .................................................................................................................9

17   Fed.R.Bankr.P. 6004(f)(1) .............................................................................................................9

18   Fed.R.Bankr.P. 6004-1(c)(3)(A) through (J) .................................................................................10

19   Local Bankruptcy Rule 6004-1(c)(1).............................................................................................10

20   Local Bankruptcy Rule 6004-1(c)(2).............................................................................................10

21   Local Bankruptcy Rule 6004-1(c)(3).............................................................................................10

22   Local Bankruptcy Rule 6004-1(c)(3)(A) through (J) .....................................................................10

23   Local Bankruptcy Rule 9013-1......................................................................................................10

24   Local Bankruptcy Rule 9013-1(a) ..................................................................................................10

25

26

27

28

1    Karl T. Anderson, the Chapter 7 Trustee ("Trustee") of the estate of Larry Kates ("Debtor"),

2  moves under 11 U.S.C. §§ 363(b) and (f) and Local Bankruptcy Rules 6004-1(c) and 9013-1(a) that

3  the Court enter an order:

4           1.      authorizing the Trustee to sell all of the right, title and interest in residential

5  real property commonly described as 17721 Scottsdale Road, Riverside, California ("Property") on

6  an as-basis, without any warranties or representations, free and clear of liens and encumbrances,

7  with such liens and encumbrances to attach to the sale proceeds, to Dylan Evans and Tami Evans

8  (collectively, the "Buyers") for the purchase price of $620,000 in accordance with the terms of a

9  California Residential Purchase Agreement and Joint Escrow Instructions dated January 21, 2018

10  and Addendum Nos. 1 and 2 thereto (collectively, the "Offer") of the Buyers, the Trustee's

11  Counteroffer thereto, and this Motion, or to any person who appears at the hearing and submits a

12  higher acceptable bid;

13           2.      authorizing the Trustee to execute any and all documents that may be

14  necessary to consummate the sale of the Property;

15           3.      approving the overbid procedures;

16           4.      authorizing the Trustee to pay any undisputed liens, the costs of sale,

17  including without limitation real estate brokerage commissions, miscellaneous escrow fees, and

18  closing costs, the unpaid property taxes, and the Debtor's homestead exemption out of the sale

19  proceeds and through the escrow; and

20           5.      finding that the Property is community property and authorizing the Trustee

21  to include in the sale order that the Property is community property and that the Trustee is

22  authorized to sell the entire Property; and

23           6.      finding that the each of the Buyers, or any person who appears at the hearing

24  and submits a higher acceptable bid and becomes the purchaser, is a good faith purchaser under

25  11 U.S.C. § 363(m).

26    This Motion is made on the grounds that: (1) the Property may be sold free and clear of

27  liens and encumbrances because the purchase price of $620,000 exceeds the aggregate value of the

28  liens and encumbrances affecting the Property; (2) the purchase price is fair and reasonable and the

2

1 │ sale is in the best interests of the creditors and the estate; (3) the proposed sale to the Buyers is

2 │ subject to overbids, and the overbid procedures are reasonable; (4) the payments of any undisputed

3 │ liens, the costs of sale, and the unpaid property taxes are necessary to effect the sale of the

4 │ Property, and the payment of the Debtor's homestead exemption is proper; (5) the finding that the

5 │ Property is community property and the inclusions of language in the sale order that the Property is

6 │ community property and that the Trustee is authorized to sell the entire Property are consistent with

7 │ current law and are necessary for title insurance purposes inasmuch as the title to the Property is

8 │ currently vested in the Debtor and Lisa Marie Kates as joint tenants; and (6) each of the Buyers, or

9 │ any other person who appears at the hearing and submits a higher acceptable bid and becomes the

10 │ purchaser, is a good faith purchaser under 11 U.S.C. § 363(m) because the Counteroffer between

11 │ the Trustee and the Buyers was the result of good faith, arms-length negotiations with no collusion,

12 │ and the sale is subject to overbids.

13 │    This Motion is based upon the Notice of Motion, this Motion, the accompanying

14 │ Memorandum of Points and Authorities, Declarations of Karl T. Anderson, Dylan Evans, Tami

15 │ Evans, and Request for Judicial Notice, all pleadings on file with this Court, and any oral and

16 │ documentary evidence that may be presented at the hearing on the Motion.

17 │

18 │ Dated: August 1, 2018         ROBERT A. HESSLING, APC

19 │

20 │               By: ROBERT A. HESSLING
                 General Counsel for Karl T. Anderson,

21 │                  Chapter 7 Trustee

22 │

23 │

24 │

25 │

26 │

27 │

28 │

# MEMORANDUM OF POINTS AND AUTHORITIES

I.

## INTRODUCTION

Karl T. Anderson, the Chapter 7 Trustee ("Trustee") of the estate of Larry Kates ("Debtor"), seeks Court approval of the sale of all of the right, title and interest in residential real property commonly described as 17721 Scottsdale Road, Riverside, California ("Property") to Dylan Evans and Tami Evans (collectively, the "Buyers") for the purchase price of $620,000 in accordance with the terms of a California Residential Purchase Agreement and Joint Escrow Instructions dated January 21, 2018 and Addendum Nos. 1 and 2 thereto (collectively, the "Offer") of the Buyers, the Trustee's Counteroffer thereto, and this Motion, or to any person who appears at the hearing and submits a higher acceptable bid. The sale is on an as-is basis, without any warranties or representations, free and clear of liens and encumbrances, with such liens and encumbrances to attach to the sale proceeds. The sale of the Property free and clear of liens and encumbrances is proper because the purchase price of $620,000 exceeds the aggregate value of the liens and encumbrances, i.e., about $440,000, affecting the Property.

The purchase price is fair and reasonable and the sale is in the best interests of the creditors and the estate. The purchase price of $620,000 is $53,000 more than the Debtor's scheduled value of $567,000 for the Property, and the Buyers' Offer and two other purchase offers were received as a result of the extensive marketing of the Property.

The Trustee also seeks Court approval to pay any undisputed liens, the costs of sale, including without limitation real estate brokerage commissions, miscellaneous escrow fees, and closing costs, the unpaid property taxes, and the Debtor's homestead exemption out of the sale proceeds and through the escrow. The payments of any undisputed liens, the costs of sale, and the unpaid property taxes are necessary to effect the sale of the Property. The payment of the Debtor's homestead exemption is proper.

The Trustee also seeks Court approval of the following overbid procedures, or such other overbid procedures that may be set by the Court: any party desiring to submit an overbid must: (1) appear at the hearing; (2) submit the overbid before or at the hearing; and (3) deposit with the

4

1    Trustee before or at the hearing a cash deposit of at least $18,600 in the form of a cashier's check,

2    payable to "Karl T. Anderson, Chapter 7 Trustee." In addition, the initial overbid for the Property

3    must be $625,000, and all subsequent overbids with respect to the Property must be in increments

4    of $1,000. Such overbid procedures are reasonable.

5         The Trustee requests that the Court find that the Property is community property and that

6    the Court authorizes the Trustee to include in the sale order that the Property is community

7    property and that the Trustee is authorized to sell the entire Property. Such finding and the

8    inclusions of such language are consistent with current law and are necessary for title insurance

9    purposes inasmuch as the title to the Property is currently vested in the Debtor and Lisa Marie

10   Kates ("Lisa") as joint tenants. Because the Debtor and Lisa acquired the Property during their

11   marriage, the community property presumption under California Family Code § 760 applies. In

12   addition, the requirements of the transmutation statute of California Family Code § 852(a) apply,

13   and the Trustee is unaware of any written agreements by which the Debtor and Lisa transmuted the

14   Property from community property to Lisa's separate property in accordance with the statutory

15   formalities of section 852(a).

16        The Trustee also requests that the Court find that each of the Buyers, or any person who

17   appears at the hearing and submits a higher acceptable bid and becomes the purchaser, is a good

18   faith purchaser under 11 U.S.C. § 363(m). The Counteroffer between the Trustee and the Buyers

19   was the result of good faith, arms-length negotiations with no collusion, and the sale is subject to

20   overbids.

21                                              II.

22                              STATEMENT OF FACTS

23        1.    On November 15, 2016, the Debtor filed a voluntary Chapter 7 petition. Karl T.

24   Anderson was appointed as the Chapter 7 Trustee.

25        2.    The property of the estate includes, among other property, the Property.

26        3.    In their Schedule "A/B," the Debtor lists a total fair market value of $567,000 for

27   the Property.

28   ///

1    4.    In their Schedule "C," the Debtor claims a homestead exemption of $100,000 in the

2    Property.

3    5.    In its Schedule "D," the Debtor lists secured claims of Chase Bank and Citibank,

4    N.A. affecting the Property.  The Trustee is informed and believes that the estimated amounts of

5    these liens are as follows:

6           Chase Bank (First Trust Deed)            $320,000

7           Citibank, N.A. (Second Trust Deed)       $120,000

8    6.    On April 6, 2018, Citibank, N.A. filed a proof of secured claim in the sum of

9    $118,992.11 regarding the Property.

10   7.    On March 15, 2017, the Trustee filed an application to employ Richard A.

11   Halderman, Jr. ("Broker") as his realtor to assist him with listing, marketing and selling the

12   Property with a listing price of $700,000, a term of almost one year, and a total brokerage

13   commission of 6% of the purchase price.  By an order entered on April 24, 2017, the Court granted

14   the application.

15   8.    The marketing of the Property generated the Buyers' Offer and two other purchase

16   offers.  The Trustee reached a mutually acceptable Counteroffer with the Buyers.

17   9.    The Trustee seeks Court approval to sell the Property to the Buyers for the purchase

18   price of $620,000, or to any other person who appears at the hearing and submits a higher

19   acceptable bid, upon the terms in the Offer, the Counteroffer, and this Motion, including without

20   limitation that:

21          a.    The purchase price of $620,000 is payable as follows: an initial deposit of

22   $18,600 and the balance of the purchase price on or before the closing date of the escrow.

23          b.    The Property is being sold on an "as-is" basis, without any representations or

24   warranties.

25          c.    The sale is free and clear of liens and encumbrances, with such liens and

26   encumbrances to attach to the sale proceeds.

27   ///

28   ///

6

1             d.       The Trustee is selling the Property in his capacity as the Chapter 7 Trustee of

2 the Debtor's estate, not in his personal capacity, and he shall not be liable personally as a result of

3 the sale.

4             e.       If for any reason or no reason the Trustee is unable to deliver possession or

5 title of the Property, the sole remedy of the Buyers shall be the return of any money deposit

6 towards the purchase of the Property.

7             f.       The sale is subject to overbids. Any party desiring to submit an overbid

8 must: (1) appear at the hearing; (2) submit the overbid before or at the hearing; and (3) deposit with

9 the Trustee before or at the hearing a cash deposit of at least $18,600 in the form of a cashier's

10 check, payable to "Karl T. Anderson, Chapter 7 Trustee." In addition, the initial overbid for the

11 Property must be $625,000, and all subsequent overbids with respect to the Property must be in

12 increments of $1,000.

13             g.       The sale is subject to Bankruptcy Court approval after providing notice to

14 the Debtor and his counsel, Lisa, the United States Trustee, all creditors, and other parties in

15 interest as required by the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Local

16 Bankruptcy Rules.

17             h.       There are no remaining contingencies except Bankruptcy Court approval.

18             i.       The total brokerage commission is $20,000 as follows:

19                      $10,000 to the Broker as the Trustee's real estate broker
                     $10,000 to Keller Williams Realty as the Buyers' real estate broker

20

21       10.      To provide the public with notice of the sale of the Property, notice of the sale is

22 being posted on the website of the Bankruptcy Court.

23       11.      If there are no overbids and the purchase price is $620,000, the estimated net sale

24 proceeds are $55,000, as shown by the following calculations:

25 ///

26 ///

27 ///

28 ///

7

| | | |
|---|---|---|
| Purchase Price | | $620,000.00 |
| Less: | | |
| Chase Bank (First Trust Deed) (estimate) | | ($320,000.00) |
| Citibank, N.A. (Second Trust Deed) (estimate) | | ($120,000.00) |
| Costs of Sale (estimate)* | | ($ 25,000.00) |
| Debtor's Homestead Exemption | | ($100,000.00) |
| | Total | $ 55,000.00 |

      * The Broker and Keller Williams Realty have agreed to reduce their respective commissions to the sum of $10,000.

If there is a higher acceptable overbid, the estimated net sale proceeds are the amount of such overbid, less the amounts of the above liens, the estimated costs of sale in the sum of $25,000, the Debtor's homestead exemption of $100,000, and unpaid property taxes.

12.    The Trustee requests Court approval to pay any undisputed liens, the costs of sale, including without limitation real estate brokerage commissions, miscellaneous escrow fees, and closing costs, the unpaid property taxes, and the Debtor's homestead exemption out of the sale proceeds and through the escrow. The payments of any undisputed liens, the costs of sale, and the unpaid property taxes are necessary to effect the sale of the Property. The payment the Debtor's homestead exemption is proper.

13.    The Trustee also requests that the Court finds that the Property is community property and that the Court authorizes the Trustee to include in the sale order that the Property is community property and that the Trustee is authorized to sell the entire Property. Such finding and inclusions of language are consistent with current law and are necessary for title insurance purposes inasmuch as the title to the Property is currently vested in the Debtor and Lisa as joint tenants. Because the Debtor and Lisa acquired the Property during their marriage, the community property presumption under California Family Code § 760 applies. In addition, the requirements of the transmutation statute of California Family Code § 852(a) apply, and the Trustee is unaware of any written agreements by which the Debtor and Lisa transmuted the Property from community property to Lisa's separate property in accordance with the statutory formalities of section 852(a).

14.    The Trustee also requests that the Court make a finding that each of the Buyers, or any person who appears at the hearing and submits a higher acceptable bid and becomes the

8

1  purchaser, is a good faith purchaser under 11 U.S.C. § 363(m).  The Counteroffer between the

2  Trustee and the Buyers was the result of good faith, arms-length negotiations with no collusion,

3  and the sale is subject to overbids.

4       15.      The Buyers have made an initial cash deposit of $18,600.

5                                III.

6                              ARGUMENT

7       A.      The Trustee Has Complied with All of the Requirements under the Bankruptcy

8               Code, the Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy

9               Rules Governing the Sale.

10      Section 102(1) of the Bankruptcy Code defines "after notice and a hearing" as after such

11  notice as is appropriate in the particular circumstances, and such opportunity for hearing as is

12  appropriate in the particular circumstances.

13      Rule 6004(a) of the Federal Rules of Bankruptcy Procedure provides in pertinent part that

14  notice of a proposed sale not in the ordinary course of business must be given pursuant to Rule

15  2002(a)(2), (c)(1)(i) and (k), and, if applicable, in accordance with 11 U.S.C. § 363(b)(2).

16      Rule 2002(a)(2) requires that the Debtors and all creditors be given at least 21 days' notice

17  by mail of a proposed sale of property of the estate other than in the ordinary course of business,

18  unless the court for cause shown shortens the time or directs another method of giving notice.

19      Rule 2002(c)(1) requires that the notice of a proposed sale include the time and place of any

20  public sale, the terms and conditions of any private sale, and the time fixed for filing objections. It

21  provides that the notice of a sale or property is sufficient if it generally describes the property.

22      Rule 2002(k) requires that the notice be given to the United States Trustee.

23      Rule 6004(c) provides that a motion for authority to sell property free and clear of liens or

24  other interests must be made in accordance with Rule 9014 and must be served on the parties who

25  have liens or other interests in the property to be sold.

26      Rule 6004(f)(1) provides in relevant part that all sales not in the ordinary course of business

27  may be by private sale or by public auction.  Rule 6004(f)(2) provides in relevant part that after a

28  ///

9

1  sale in accordance with Rule 6004, the trustee shall execute any instrument necessary or ordered by
2  the court to effectuate the transfer to the purchaser.

3        Local Bankruptcy Rule 6004-1(c)(1) provides in relevant part that an order authorizing the
4  sale of estate property other than in the ordinary course of business may be obtained upon motion
5  by the trustee in a Chapter 7 case after notice and a hearing pursuant to Local Bankruptcy Rule
6  9013-1(a).

7        Local Bankruptcy Rule 9013-1(a) requires at least 21 days' notice of the hearing.

8        Local Bankruptcy Rule 6004-1(c)(2) requires that the motion be supported by the movant's
9  declaration establishing the value of the property and that the terms and conditions of the proposed
10  sale, including the purchase price and all contingencies, are in the best interest of the estate.

11        Local Bankruptcy Rule 6004-1(c)(3) provides that if the motion is set for hearing pursuant
12  to Local Bankruptcy Rule 9013-1, the notice must state certain information that is set forth in Rule
13  6004-1(c)(3)(A) through (J).

14        The Trustee has complied with all the above provisions of the Bankruptcy Code, the
15  Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules. Notice of this Motion
16  and the proposed sale are being given to the Debtor and his counsel, Lisa, the United States
17  Trustee, the Buyers, the lienholders (i.e., Chase Bank and Citibank, N.A.), all creditors, and all
18  parties in interest at least 21 days before the date of the hearing. In addition, the notice of the
19  Motion contains: (a) all of the requisite information prescribed by Local Bankruptcy Rule 6004-
20  1(c)(3)(A) through (J); and (b) the procedures under Local Bankruptcy Rule 9013-1(a) regarding
21  the filing and service of any opposition, response or joinder to the motion. This Motion is being
22  served upon the Debtor and his counsel, Lisa, the lienholders (i.e., Chase Bank and Citibank, N.A.),
23  the Buyers, and the United States Trustee. In addition, this Motion is supported by the declaration
24  of the Trustee, who addresses the fair market value of the Property and indicates that the terms and
25  conditions of the proposed sale, including the purchase price, are in the best interest of the estate.
26  To provide the public with notice of the sale of the Property, notice of the sale is being posted on
27  the Bankruptcy Court's website.

28  ///

1      B.      The Sale Free and Clear of Liens and Encumbrances, with Such Liens and

2              Encumbrances to attach to the Sale Proceeds, Is Proper under Section 363(f).

3           Section 363(b)(1) provides that after notice and a hearing, the trustee may sell property of

4   the estate other than in the ordinary course of business.  Section 363(f) empowers the trustee to sell

5   property out of the ordinary course of business "free and clear of any interest in such property of

6   any entity" if one of the following five conditions are present: (1) applicable non-bankruptcy law

7   permits sale of such property free and clear of such interest; (2) such entity consents; (3) such

8   interest is a lien and the price at which such property is to be sold is greater than the aggregate

9   value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could

10  be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11          Section 363(f) is written in the disjunctive – satisfaction of one of the five conditions is

12  sufficient to sell property free clear of liens. *In re Elliot*, 94 B.R. 343, 345 (Bankr.D.Pa. 1988).

13  A sale under section 363(f) is subject to the adequate protection requirement. S.REP.NO. 989, 95th

14  Cong., 2d Sess. 57 (1978).  Most often, adequate protection in connection with a sale free and clear

15  of other interests will be to have those interests attach to the proceeds of the sale. *Id*.

16          The sale of the Property free and clear of liens and encumbrances under section 363(f) is

17  proper because the purchase price of $620,000 exceeds the aggregate value of the liens and

18  encumbrances, i.e., about $440,000, affecting the Property.

19      C.      The Sale Should Be Approved Because the Purchase Price Is Fair and

20              Reasonable and the Sale Is in the Best Interests of the Estate and the Creditors.

21          The standard to be applied in determining whether a sale should be authorized under section

22  363(b)(1) is whether such sale is in the best interest of the estate and the price is fair and

23  reasonable. *See, generally, In re Canyon Partnership*, 55 B.R. 520 (Bankr. S.D. Cal. 1985).  The

24  trustee is given substantial discretion in this regard. *Id*.  A court has broad discretion with respect to

25  matters under section 363(b). *See Big Shanty Land Corp. v. Comer Properties, Inc.*, 61 B.R. 272,

26  278 (Bankr. N.D. Ga. 1985).  In any sale of estate assets, the ultimate purpose is to obtain the

27  highest price for the property sold. *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841 (Bankr.

28  C.D. Cal. 1991) (citing *Matter of Chung King, Inc.*, 753 F.2d 547 (7th Cir. 1985), *In re Alpha*

11

1 | *Industries, Inc.*, 84 B.R. 703, 705 (Bankr. D.Mont. 1988), and 2 *Collier on Bankruptcy*, ¶ 363.03[1]
2 | (15th ed.)).

3 |     The purchase price is fair and reasonable and the sale is in the best interests of the creditors
4 | and the estate. The purchase price of $620,000 is $53,000 more than the Debtor's scheduled value
5 | of $567,000 for the Property, and the Buyers' Offer and two other purchase offers were received as
6 | a result of the extensive marketing of the Property.

7 |     D.    The Trustee Should Be Authorized to Execute Any and All Documents That May
8 |         Be Necessary to Consummate the Sale.

9 |     Rule 6004(f)(2) provides in relevant part that after a sale in accordance with Rule 6004, the
10 | trustee shall execute any instrument necessary or ordered by the Court to effectuate the transfer to
11 | the purchaser.

12 |     The Trustee should be authorized to execute any and all documents that may be necessary
13 | to consummate the sale of the Property. Such relief is consistent with Rule 6004(f)(2).

14 |     E.    The Overbid Procedures Should Be Approved Because Such Procedures Are
15 |         Reasonable.

16 |     The Trustee requests that the Court approve the following overbid procedures, or such other
17 | overbid procedures that may be set by the Court: any party desiring to submit an overbid must:
18 | (1) appear at the hearing; (2) submit the overbid before or at the hearing; and (3) deposit with the
19 | Trustee before or at the hearing a cash deposit of at least $18,600 in the form of a cashier's check,
20 | payable to "Karl T. Anderson, Chapter 7 Trustee." In addition, the initial overbid for the Property
21 | must be $625,000, and all subsequent overbids with respect to the Property must be in increments
22 | of $1,000. Such overbid procedures, including the initial minimum overbid of $625,000, are
23 | reasonable.

24 |     F.    The Payments of the Undisputed Liens, the Costs of Sale, and the Unpaid Property
25 |         Taxes Are Necessary, and the Payment of the Homestead Exemption Is Proper.

26 |     The Trustee also requests Court approval to pay any undisputed liens, the costs of sale,
27 | including without limitation real estate brokerage commissions, miscellaneous escrow fees, and
28 | closing costs, the unpaid property taxes, and the Debtor's homestead exemption out of the sale

12

1  proceeds and through the escrow.  The payments of any undisputed liens, the costs of sale, and the

2  unpaid property taxes are necessary to effect the sale of the Property.  The payment of the

3  homestead exemption is proper.

4        G.     The Finding That the Property Is Community Property and the Inclusions of

5             Language in the Sale Order That the Property Is Community Property and That the

6             Trustee Is Authorized to Sell the Entire Property Are Consistent with Current Law

7             and Are Necessary for Title Insurance Purposes.

8       Section 760 of the California Family Code contains the community property presumption

9  and provides that except as otherwise provided by statute, all property, real or personal, wherever

10  situated, acquired by a married person during the marriage while domiciled in this state is

11  community property.

12       Section 852 of the California Family Code contains the transmutation requirements.

13  Section 852(a) provides that a transmutation of real or personal property is not valid unless made in

14  writing by an express declaration that is made, joined in, consented to, or accepted by the spouse

15  whose interest in the property is adversely affected.

16       Section 662 of the California Evidence Code provides that the owner of the legal title to

17  property is presumed to be the owner of the full beneficial title and that this presumption may be

18  rebutted only by clear and convincing proof.

19       In *In re Marriage of Valli,* 58 Cal.4th 1396, 171 Cal.Rptr.3d 454, 324 P.3d 274 (2014), the

20  California Supreme Court held that in a marital dissolution proceeding, acquisitions of property

21  made by one or both spouses from a third party during marriage are not exempt from the marital

22  property transmutation statutes for transmuting community property to separate property and unless

23  the requirements of these statutes are met, property acquired during marriage is community

24  property.  The California Supreme Court rejected the holding of the Ninth Circuit in *In re*

25  *Summers*, 332 F.3d 1240 (9th Cir. 2003) that the community property presumption was rebutted by

26  a third party deed specifying record title in the property as joint tenants and that the statutory

27  formalities of the California marital property transmutation statute were inapplicable to transactions

28  where a spouse acquires property during the marriage from a third party.  The *Valli* Court

13

1  analyzing the decision in *Summers* and *In re Marriage of Brooks v. Robinson*, 169 Cal.App.4th 176

2  (Cal. Ct. App. 2008), which it characterized as "the first decision by a California state appellate

3  court exempting from the transmutation requirements a spousal purchase from a third party." The

4  California Supreme Court in *Valli* concluded that those decisions "are not persuasive insofar as

5  they purport to exempt from the transmutation requirements purchases made by one or both

6  spouses from a third party during marriage" and stated three reasons why those decisions were

7  unpersuasive:

8         Neither decision attempts to reconcile such an exemption with the legislative

9      purposes in enacting those requirements, which was to reduce excessive litigation,

10  introduction of unreliable evidence, and incentives for perjury in marital dissolutions

11  proceedings involving disputes regarding characterization of property. Nor does either

12  decision attempt to find a basis for the purported exemption in the language of the

13  applicable transmutation statutes. Also, these decisions are inconsistent with three Court of

14  Appeal decisions stating or holding that the transmutation requirements apply to one

15  spouse's purchases from a third party during the marriage.

16  *In re Marriage of Valli*, 58 Cal.4th at 1405 (citing *In re Marriage of Buie & Neighbors,*

17  179 Cal.App.4th 1170, 1173-1175, 102 Cal.Rptr.3d 387 (Cal. Ct. App. 2009), *In re*

18  *Marriage of Cross,* 94 Cal.App.4th 1143, 1147-1148, 114 Cal.Rptr.2d 839 (Cal. Ct. App.

19  2001) and *In re Marriage of Steinberger,* 91 Cal.App.4th 1449, 1463-1466, 111 Cal.Rptr.2d

20  521 (Cal Ct. App. 2001)).

21      The California Supreme Court in *Valli* gave a further reason based on the language of

22  section 852(a) for not exempting third party transactions for acquisition of property with one

23  spouse or both spouses during a marriage from the statutory formalities of marital property

24  transmutation:

25         Our examination of the statutory language leads us to reject the purported exemption

26      for spousal purchases from third parties. As we have said, the transmutation statutes provide

27      an express exemption for gifts of relatively inexpensive personal items. (Fam.Code,

28      § 852(a), subd. (c)). Because spouses most often use community funds to purchase such

14

1    gifts for each other, the statutory exemption necessarily implies that gifts not qualifying for

2    the exemption (because they are substantial in value or because they are not items of a

3    personal nature) are transmutations subject to the express declaration requirement,

4    notwithstanding that a great many, if not most, involve purchases from third parties.

5    *In re Marriage of Valli*, 58 Cal.4th at 1405-1406 (citation and footnote omitted; emphasis in

6    original).

7        In *In re Obedian*, 546 B.R. 409 (Bankr. C.D. Cal. 2016), the Bankruptcy Court for the

8    Central District of California held that real property, which a Chapter 7 debtor and her non-debtor

9    spouse purchased from a third party and took record title as joint tenants, was community property.

10   It applied the community property presumption in California Family Code § 760 and the marital

11   property transmutation statute in California Family Code § 852(a), as indicated by the California

12   Supreme Court in *Valli*. The Bankruptcy Court ruled that the property was community property

13   because the community property presumption applied and the Trustee failed to show by a

14   preponderance of the evidence that the Debtor and her spouse transmuted the character of the real

15   property from community property to separate property in order to rebut the community property

16   presumption under section 760.

17       The Trustee requests that the Court finds that the Property is community property and that

18   the Court authorizes the Trustee to include in the sale order that the Property is community

19   property and that the Trustee is authorized to sell the entire Property. Such finding and the

20   inclusions of such language are consistent with current law and are necessary for title insurance

21   purposes inasmuch as the title to the Property is currently vested in the Debtor and Lisa as joint

22   tenants. Because the Debtor and Lisa acquired the Property during their marriage, the community

23   property presumption under California Family Code § 760 applies. In addition, the requirements of

24   the transmutation statute of California Family Code 852(a) apply, and the Trustee is unaware of

25   any written agreements by which the Debtor and Lisa transmuted the Property from community

26   property to Lisa's separate property in accordance with the statutory formalities of section 852(a).

27   ///

28   ///

15

1           H.      A Finding That Each of the Purchasers Is a Good Faith Purchaser under 11 U.S.C.

2                 § 363(m) Is Proper.

3        Section 363(m) of the Bankruptcy Code provides that the reversal or modification of an

4 authorization under section 363(b) or (c) of a sale or lease of property does not affect the validity of

5 a sale or lease under such authorization to an entity that purchased or leased such property in good

6 faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and

7 such sale or lease were stayed pending appeal.

8        A purchaser of property is protected from the effects of reversal on appeal of the

9 authorization to sell or lease as long as the Court finds that the purchaser acted in good faith and

10 the appellant fails to obtain a stay of the sale. 11 U.S.C. § 363(m).  A good faith purchaser is one

11 who buys in good faith and for value. *In re Ewell*, 958 F.2d 276, 281 (9th Cir. 1992).  Although the

12 Code does not define "good faith," courts have provided guidance as to the appropriate factors to

13 consider. *See id.* (lack of good faith generally shown by fraud, collusion between the purchaser

14 and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders);

15 *In re Pine Coast Enters., Ltd.*, 147 B.R. 30, 33 (Bankr. N.D. Ill. 1992) ("[t]he requirement that a

16 purchaser act in good faith speaks to the integrity of its conduct in the course of the sale

17 proceeding."); *Kham and Nate's Shoes No. 2 v. First Bank*, 908 F.2d 1351, 1355 (7th Cir. 1990)

18 ("[t]he purpose of Section 363(m) is to disable courts from backtracking on promises with respect

19 to bankruptcy sales in the absence of bad faith.").

20        A finding that each of the Buyers, or any successful overbidder, is a good faith purchaser

21 under section 363(m) is proper.  The Counteroffer between the Trustee and the Buyers was the

22 result of good faith, arms-length negotiations with no collusion, and the sale is subject to overbids.

23 As indicated by the declarations of Dylan Evans and Tami Evans, the negotiations regarding the

24 purchase and sale were among the Buyers, the Broker, Kimberly Olivo of Keller Williams Realty,

25 and Robert A. Hessling ("Hessling") of Robert A. Hessling, APC, the Trustee's general counsel.

26 The Debtor and his counsel and Lisa were not involved in any manner with such negotiations.

27 Before reaching the Counteroffer, the Buyers did not have any prior dealings or relationships with

28 the Trustee, Hessling, and the Broker.  At no time in connection with the Counteroffer and the

16

1  proposed purchase and sale of the Property did the Buyers engage in any collusion or similar type

2  of acts or any other conduct that would taint, chill or otherwise undermine the sale process. At all

3  times in connection with the agreement and the proposed purchase and sale of the Property, the

4  Buyers acted in good faith.

5                                                    IV.

6                                             CONCLUSION

7          Based upon the above reasons, the Trustee respectfully requests that the Court enter an

8  order:

9          1.      authorizing the Trustee to sell all of the right, title and interest in the

10 Property on an as-basis, without any warranties or representations, free and clear of liens and

11 encumbrances, with such liens and encumbrances to attach to the sale proceeds, to the Buyers for

12 the purchase price of $620,000 in accordance with the terms of the Offer, the Trustee's

13 Counteroffer thereto, and this Motion, or to any person who appears at the hearing and submits a

14 higher acceptable bid;

15         2.      authorizing the Trustee to execute any and all documents that may be

16 necessary to consummate the sale of the Property;

17         3.      approving the overbid procedures;

18         4.      authorizing the Trustee to pay any undisputed liens, the costs of sale,

19 including without limitation real estate brokerage commissions, miscellaneous escrow fees, and

20 closing costs, the unpaid property taxes, and the Debtor's homestead exemption out of the sale

21 proceeds and through the escrow;

22         5.      finding that the Property is community property and authorizing the Trustee

23 to include in the sale order that the Property is community property and that the Trustee is

24 authorized to sell the entire Property;

25         6.      finding that each of the Buyers, or any person who appears at the hearing

26 and submits a higher acceptable bid and becomes the purchaser, is a good faith purchaser under

27 11 U.S.C. § 363(m); and

28 ///

                                                    17

1       7.    granting such other and further relief as may be just and proper.

2  Dated: August 1, 2018          ROBERT A. HESSLING, APC

4               By: ROBERT A. HESSLING
                   General Counsel for Karl T. Anderson,

5                   Chapter 7 Trustee

18

# DECLARATION OF KARL T. ANDERSON

## **DECLARATION OF KARL T. ANDERSON**

I, Karl T. Anderson, declare as follows:

1.     I am the duly appointed and acting Chapter 7 Trustee of the estate of Larry Kates ("Debtor").

2.     I have personal knowledge of the facts in this declaration, except those matters that are stated upon information and belief, and as to such matters I believe such matters to be true.  If called as a witness, I could testify competently to these facts and matters.

3.     On November 15, 2016, the Debtor filed a voluntary Chapter 7 petition.  I was appointed as the Chapter 7 Trustee.

4.     The property of the estate includes, among other property, residential real property commonly described as 17721 Scottsdale Road, Riverside, California ("Property").

5.     In their Schedule "A/B," the Debtor lists a total fair market value of $567,000 for the Property.

6.     In their Schedule "C," the Debtor claims a homestead exemption of $100,000 in the Property.

7.     In its Schedule "D," the Debtor lists secured claims of Chase Bank and Citibank, N.A. affecting the Property.

8.     I am informed and believe that the estimated amounts of these liens are as follows:

Chase Bank (First Trust Deed)          $320,000

Citibank, N.A. (Second Trust Deed)     $120,000

9.     On March 15, 2017, I filed an application to employ Richard A. Halderman, Jr. ("Broker") as my realtor to assist me with listing, marketing and selling the Property with a listing price of $700,000, a term of almost one year, and a total brokerage commission of 6% of the purchase price.  By an order entered on April 24, 2017, the Court granted the application.

10.     The marketing of the Property generated a purchase offer of Dylan Evans and Tami Evans (collectively, the "Buyers") and two other purchase offers.  The Buyers' purchase offer is in the forms of a California Residential Purchase Agreement and Joint Escrow Instructions dated January 21, 2018 and Addendum Nos. 1 and 2 thereto (collectively, the "Offer").  I reached a

19

1 mutually acceptable Counteroffer with the Buyers. True and correct copies of the Offer and my

2 Counteroffer thereto are attached as Exhibit "1."

3    11.    I seek Court approval to sell the Property to the Buyers for the purchase price of

4 $620,000, or to any other person who appears at the hearing and submits a higher acceptable bid,

5 upon the terms in the Offer, the Counteroffer, and this Motion, including without limitation that:

6         a.    The purchase price of $620,000 is payable as follows: an initial deposit of

7 $18,600 and the balance of the purchase price on or before the closing date of the escrow.

8         b.    The Property is being sold on an "as-is" basis, without any representations or

9 warranties.

10         c.    The sale is free and clear of liens and encumbrances, with such liens and

11 encumbrances to attach to the sale proceeds.

12         d.    I am is selling the Property in my capacity as the Chapter 7 Trustee of the

13 Debtor's estate, not in my personal capacity, and I shall not be liable personally as a result of the

14 sale.

15         e.    If for any reason or no reason I am unable to deliver possession or title of the

16 Property, the sole remedy of the Buyers shall be the return of any money deposit towards the

17 purchase of the Property.

18         f.    The sale is subject to overbids. Any party desiring to submit an overbid

19 must: (1) appear at the hearing; (2) submit the overbid before or at the hearing; and (3) deposit with

20 me before or at the hearing a cash deposit of at least $18,600 in the form of a cashier's check,

21 payable to "Karl T. Anderson, Chapter 7 Trustee." In addition, the initial overbid for the Property

22 must be $625,000, and all subsequent overbids with respect to the Property must be in increments

23 of $1,000.

24         g.    The sale is subject to Bankruptcy Court approval after providing notice to

25 the Debtor and his counsel, Lisa Marie Kates ("Lisa"), the United States Trustee, all creditors, and

26 other parties in interest as required by the Bankruptcy Code, Federal Rules of Bankruptcy

27 Procedure, and Local Bankruptcy Rules.

28         h.    There are no remaining contingencies except Bankruptcy Court approval.

20

1          i.      The total brokerage commission is $20,000 as follows:

2                  $10,000 to the Broker as my real estate broker
                   $10,000 to Keller Williams Realty as the Buyers' real estate broker
3

4       12.     To provide the public with notice of the sale of the Property, notice of the sale is

5   being posted on the website of the Bankruptcy Court.

6       13.     If there are no overbids and the purchase price is $620,000, the estimated net sale

7   proceeds are $55,000, as shown by the following calculations:

8   Purchase Price                                                              $620,000.00
    Less:
9          Chase Bank (First Trust Deed) (estimate)                          ($320,000.00)
           Citibank, N.A. (Second Trust Deed) (estimate)                     ($120,000.00)
10         Costs of Sale (estimate)*                                         ($ 25,000.00)
           Debtor's Homestead Exemption                                      ($100,000.00)
11
                                                                   Total        $ 55,000.00
12

13                 * The Broker and Keller Williams Realty have agreed to reduce their
                   respective commissions to the sum of $10,000.
14

15  If there is a higher acceptable overbid, the estimated net sale proceeds are the amount of such

16  overbid, less the amounts of the above liens, the estimated costs of sale in the sum of $25,000, the

17  Debtor's homestead exemption of $100,000, and unpaid property taxes.

18      14.     I request Court approval to pay any undisputed liens, the costs of sale, including

19  without limitation real estate brokerage commissions, miscellaneous escrow fees, and closing costs,

20  the unpaid property taxes, and the Debtor's homestead exemption out of the sale proceeds and

21  through the escrow. I believe that the payments of any undisputed liens, the costs of sale, and the

22  unpaid property taxes are necessary to effect the sale of the Property. I believe that the payment of

23  the Debtor's homestead exemption is proper.

24      15.     I also request that the Court finds that the Property is community property and that

25  the Court authorizes me to include in the sale order that the Property is community property and

26  that I am authorized to sell the entire Property. I believe that such finding and the inclusions of

27  such language are consistent with current law and are necessary for title insurance purposes

28  inasmuch as the title to the Property is currently vested in the Debtor and Lisa as joint tenants.

21

1  Because the Debtor and Lisa acquired the Property during their marriage, I believe that the

2  community property presumption under California Family Code § 760 applies. In addition, I

3  believe that the requirements of the transmutation statute of California Family Code § 852(a) apply,

4  and I am unaware of any written agreements by which the Debtor and Lisa transmuted the Property

5  from community property to Lisa's separate property in accordance with the statutory formalities

6  of section 852(a).

7      16.    I also request that the Court make a finding that each of the Buyers, or any person

8  who appears at the hearing and submits a higher acceptable bid and becomes the purchaser, is a

9  good faith purchaser under 11 U.S.C. § 363(m). I believe that the Counteroffer between the Bueyrs

10  and me was the result of good faith, arms-length negotiations with no collusion, and the sale is

11  subject to overbids.

12      17.    The Buyers have made an initial cash deposit of $18,600.

13      I declare under penalty of perjury that the foregoing is true and correct.

14      Executed on July 3/, 2018, at Palm Springs, California.

15

16                                    KARL T. ANDERSON

17

18

19

20

21

22

23

24

25

26

27

28

22

# DECLARATION OF DYLAN EVANS

## DECLARATION OF DYLAN EVANS

I, Dylan Evans, declare as follows:

1.      I am the one of the proposed purchasers in the foregoing sale motion ("Motion").

2.      I have personal knowledge of the facts in this declaration and, if called as a witness, I could testify competently to these facts.

3.      Tami Evans ("Tami") and I submitted a purchase offer in the forms of a California Residential Purchase Agreement and Joint Escrow Instructions dated January 21, 2018 and Addendum Nos. 1 and 2 (collectively, the "Offer") regarding residential real property commonly described as 17721 Scottsdale Road, Riverside, California ("Property"). We reached a mutually acceptable Counteroffer with Karl T. Anderson, the Chapter 7 Trustee ("Trustee") of the estate of Larry Kates ("Debtor"), regarding the purchase and sale of the Property. True and correct copies of the Offer and the Trustee's Counteroffer thereto are attached as Exhibit "1."

4.      The Counteroffer was the result of good faith, arms-length negotiations with no collusion. The negotiations regarding the purchase and sale were among Tami, me, Richard A. Halderman, Jr. ("Halderman"), which is the Trustee's real estate broker, Kimberly Olivo of Keller Williams Realty, which is the real estate broker for Tami and me in this transaction, and Robert A. Hessling ("Hessling") of Robert A. Hessling, APC, the Trustee's general counsel.

5.      Before reaching the Counteroffer, I did not have any prior dealings or relationships with the Trustee, Hessling, and Halderman.

6.      At no time in connection with the Counteroffer and the proposed purchase and sale of the Property that is the subject of the Counteroffer did I engage in any collusion or similar type of acts or any other conduct that would taint, chill or otherwise undermine the sale process.

7.      At all times in connection with the Counteroffer and the proposed purchase and sale of the Property, I acted in good faith.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 31, 2018 at Corona, California.

DYLAN EVANS

23

# DECLARATION OF TAMI EVANS

# DECLARATION OF TAMI EVANS

I, Tami Evans, declare as follows:

1.   I am the one of the proposed purchasers in the foregoing sale motion ("Motion").

2.   I have personal knowledge of the facts in this declaration and, if called as a witness, I could testify competently to these facts.

3.   Dylan Evans ("Dylan") and I submitted a purchase offer in the forms of a California Residential Purchase Agreement and Joint Escrow Instructions dated January 21, 2018 and Addendum Nos. 1 and 2 (collectively, the "Offer") regarding residential real property commonly described as 17721 Scottsdale Road, Riverside, California ("Property"). We reached a mutually acceptable Counteroffer with Karl T. Anderson, the Chapter 7 Trustee ("Trustee") of the estate of Larry Kates ("Debtor"), regarding the purchase and sale of the Property. True and correct copies of the Offer and the Trustee's Counteroffer thereto are attached as Exhibit "1."

4.   The Counteroffer was the result of good faith, arms-length negotiations with no collusion. The negotiations regarding the purchase and sale were among Dylan, me, Richard A. Halderman, Jr. ("Halderman"), which is the Trustee's real estate broker, Kimberly Olivo of Keller Williams Realty, which is the real estate broker for Dylan and me in this transaction, and Robert A. Hessling ("Hessling") of Robert A. Hessling, APC, the Trustee's general counsel.

5.   Before reaching the Counteroffer, I did not have any prior dealings or relationships with the Trustee, Hessling, and Halderman.

6.   At no time in connection with the Counteroffer and the proposed purchase and sale of the Property that is the subject of the Counteroffer did I engage in any collusion or similar type of acts or any other conduct that would taint, chill or otherwise undermine the sale process.

7.   At all times in connection with the Counteroffer and the proposed purchase and sale of the Property, I acted in good faith.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 31, 2018 at Corona, California.

TAMI EVANS

24

# REQUEST FOR JUDICIAL NOTICE

1

## REQUEST FOR JUDICIAL NOTICE

2       Karl T. Anderson, the Chapter 7 Trustee of the estate of Larry Kates ("Debtor"), requests

3 pursuant to Fed.R.Evid. 201 that the Court take judicial notice of the following schedules and

4 pleadings in the Debtor's Chapter 7 case and the following document:

5     A.     Real Estate Document

6             <u>Recording Date</u>   <u>Document</u>             <u>Exhibit</u>

7             August 7, 2001   Grant Deed           Exhibit "2"

8

9     B.     Pleadings in *In re Larry Kates*, Case No. 6:16-bk-19786-SC in the United States

10           Bankruptcy Court for the Central District of California, Riverside Division

11       Docket No.   Filing Date   Pleading

12                  4/6/18      Proof of Claim No. 2 of Citibank, N.A.

13           1       11/15/16   Voluntary Petition, Schedules and Statement of Financial

14                            Affairs

          29      3/15/17    Chapter 7 Trustee's Application to Employ Richard A.

15                             Halderman, Jr. as Realtor; Declaration of Proposed Realtor

16           34      4/24/17    Order Authorizing Employment of Richard A. Halderman,
                     (entered)    Jr. as Realtor

17

Dated: August 1, 2018                 ROBERT A. HESSLING, APC

18

19                     By: ROBERT A. HESSLING

20                       General Counsel for Karl T. Anderson,
                      Chapter 7 Trustee

21

22

23

24

25

26

27

28

25